UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MASCO CABINETRY, LLC,

      Plaintiff,                             Case No. 15-cv-10462
                                               Hon. Matthew F. Leitman

v.

SAVVY HOMES, LLC,

      Defendant.

_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION (ECF #5) AND DISMISSING PLAINTIFF'S COMPLAINT (ECF #1)

## INTRODUCTION

Plaintiff Masco Cabinetry, LLC, ("Masco"), a Michigan-based cabinet maker with offices in North Carolina, sold cabinetry products and provided installation services to Defendant Savvy Homes, LLC, ("Savvy"), a North Carolina-based residential home builder. Masco installed its products in Savvy homes under construction in North Carolina. Masco says that Savvy has failed to pay the full amount owing for the products and services that Masco provided, and Masco has filed this action to collect the outstanding balance. (*See* Complaint, ECF #1.) Savvy says that the cabinets were defective.

Savvy has moved to dismiss this action for lack of personal jurisdiction (the "Motion to Dismiss"). (*See* ECF #5.) Masco contends that the Court may assert

1

personal jurisdiction over Savvy because Savvy entered into a contract with Masco under which Savvy consented to personal jurisdiction in Michigan. The Court concludes that Savvy did not give such consent. Accordingly, for the reasons explained in more detail below, the Court will **GRANT** Savvy's Motion to Dismiss (ECF #5) and **DISMISS** Masco's Complaint (ECF #1).

## <u>FACTUAL BACKGROUND AND PROCEDURAL HISTORY</u>

Savvy is a North Carolina company that builds homes in North Carolina and Alabama. (*See* Affidavit of Savvy founder George Aiken, ECF #5-1 at ¶¶ 2-3.) Savvy has never built a home in Michigan, nor is it licensed to build homes or do business in this state. (*See id.* at ¶3.)

In mid-2012, Savvy selected Masco as a subcontractor "to provide and install various cabinetry products [for] approximately 370 residential homes that Savvy was designing and building" in North Carolina. (*Id.* at ¶5.) "The persons [at Masco] with whom Savvy dealt on a day-to-day basis when the foregoing homes were built were located in North Carolina, not Michigan." (*Id.*)

When Savvy selected Masco, Savvy had Masco sign the "Savvy Agreement General Terms & Conditions" (the "Savvy Agreement"). (*See* ECF #5-2; *see also* Aiken Aff., ECF #5-1 at ¶4.) Savvy also had Masco initial each and every page of the Savvy Agreement. (*See* ECF #5-2.) Savvy signed the Savvy Agreement as well. Among other things, the Savvy Agreement established quality levels that

2

Masco had to achieve; set a work schedule; required a clean job site; addressed issues related to liens; required Masco to indemnify Savvy for certain claims; and required Savvy to obtain and maintain insurance coverage. (*See* ECF 5-2 at ¶¶ 1-2, 4, 7, 10-13.)   The Savvy Agreement also provided that Savvy would "issue purchase orders to [Masco] for all authorized work at prices agreed upon in advance."   (*Id.* at ¶11.)   The Savvy Agreement did not contain a forum-selection clause.

After the parties executed the Savvy Agreement, Masco conducted a more detailed "review of the document," determined that it was not satisfied with some of the provisions, and "negotiated certain changes to the agreement."   (Masco Supplemental Brief, ECF #12 at 3, Pg. ID 272.)  These changes were memorialized in an "Addendum" to the Savvy Agreement.  (*See* ECF #12 at 30-31, Pg. ID 296-297.)   The changes Masco "negotiated" included revisions to Masco's indemnification obligations, changes to the type of warranties provided, and modifications of details with respect to pricing.  Notably, Masco and Savvy did *not* include in the Addendum a forum-selection clause under which disputes between the parties would be adjudicated in Michigan.

After the parties executed the Addendum, Savvy began making purchases from Masco.  As part of this process, Masco provided Savvy with quotes listing the price of the fixtures it proposed to supply and install (the "Masco Quotes"). (*See*

3

Affidavit of Patrice Roe, ECF #7 at ¶¶2-3; *see also* example Masco Quotes, ECF #6 at 28-29, Pg. ID 102-103.)  Each Masco Quote included a boilerplate statement that the quote was "subject to [Masco's] standard sales terms and conditions as in effect from time to time, which are found at www.mascocabinetry.com and are incorporated herein by reference [the "Masco Terms and Conditions"]."  (ECF #6 at 28-29, Pg. ID 102-103.)  None of the Masco Quotes actually listed any of the Masco Terms and Conditions.

The Masco Terms and Conditions conflicted with several of the terms and conditions that the parties had specifically "negotiated" in the previously-executed Addendum.  For example, the warranties provided in the Masco Terms and Conditions (*see* ECF #6 at 45, ¶¶ 2-3, Pg. ID 119) are fundamentally different from the warranties provided in the Addendum (*see* ECF #12 at 30, Pg. ID 296).  More specifically, the Addendum requires Masco to "commence and diligently pursue to correct any breach, default or defect in the work" (*id*); the Masco Terms and Conditions, on the other hand, do not require Masco to repair any breaches and allow Masco instead to issue a "credit for [a] nonconforming product" in lieu of a repair.  (ECF #6 at 45 at ¶3, Pg. ID 119).  In addition, the Masco Terms and Conditions place substantial limits on Masco's potential liability in any civil action brought against it (*see id.* at ¶4, Pg. ID 119), while the Addendum specifically incorporates Savvy's broad right to indemnification in "personal injury and

4

property damage" actions that was initially included in the Savvy Agreement. (*See* ECF #12 at 30, Pg. ID 296.) The Masco Terms and Conditions and the Addendum also conflict with respect to accounting for applicable taxes. The Addendum requires Masco's pricing to "*include[]* applicable state and local taxes at the rate in effect at the time of [Masco's] bid submittal." (ECF #12 at 31, Pg. ID 297; emphasis added.) But the Masco Terms and Conditions state that "*[i]n addition to the price specified*, [Savvy] is responsible" for any applicable taxes. (ECF #6 at 45 at ¶5, Pg. ID 119; emphasis added). Finally, even though Masco had specifically agreed to do business with Savvy on *Savvy's* terms (as modified by the negotiated Addendum), the Masco Terms and Conditions provided that Masco would not do business with a contractor (like Savvy) unless and until the contractor accepts *Masco's* terms:

> Our quote, acknowledgment or acceptance of your order is expressly limited to and made conditional upon your acceptance of these terms and conditions.
>
> [….]
>
> You acknowledge that the prices stated are predicated on the enforceability of these [t]erms, that the prices would be substantially higher if these [t]erms did not apply, and that you accept these [t]erms in exchange for such lower prices.

(ECF #6 at 45, ¶1, Pg. ID 119; *see also* Roe Aff., ECF #7 at ¶8.))

5

The Masco Terms and Conditions also provided that any disputes between Masco and its customers would be resolved in Michigan (the "Michigan Forum-Selection Clause"):

> All orders shall be construed, interpreted and the rights of the parties determined in accordance with the laws of the State of Michigan without regard to any conflict of laws provision that might otherwise apply. [....] **You agree to exercise any right or remedy in connection with these [t]erms exclusively in, and you agree to submit to the jurisdiction of the appropriate state or federal court in Ann Arbor, Michigan.**

(ECF #6 at 46, ¶19, Pg. ID 120; emphasis added.)

When Savvy chose to purchase the Masco products and services at the prices listed in the Masco Quotes, Savvy issued purchase orders (on its own, pre-printed forms) specifying the quantity ordered and the price to be paid.  (*See, e.g., id.* at 59-61, Pg. ID 133-135.)  These purchase orders did not contain any reference to the Masco Quotes and did not expressly accept the Masco Terms and Conditions. (S*ee id.*; *see also* Aiken Aff., ECF #5-1 at ¶4.)  Savvy says it "never agreed to be bound by [the Masco Terms and Conditions]" and never received a copy of those terms until Masco filed this action.  (*See* Aiken Aff., ECF #5-1 at ¶4.)

Masco, however, says that the Masco Quotes were offers to enter into contracts that incorporated the Masco Terms and Conditions and that Savvy accepted those offers – and agreed to the Masco Terms and Conditions – when it issued purchase orders in response to the quotes.  Masco further claims that it

6

"extended credit and shipped goods [to Savvy], on the basis that the transactions between the parties would be governed by the laws of the State of Michigan, and that the state and federal courts in Ann Arbor, Michigan, would have exclusive jurisdiction over any disputes that arose between the parties…." (Roe Aff., ECF #7 at ¶9.)  Masco insists that it would not have done business with Savvy if Savvy had not accepted the Masco Terms and Conditions. (*See id.*)

In 2014, a dispute arose between the parties concerning whether Masco had breached its obligation to provide products of sufficient quality and workmanship and whether Savvy had failed to pay Masco all amounts due and owing.  On December 18, 2014, Masco filed this breach of contract action against Savvy in the Washtenaw County Circuit Court.  (*See* ECF #1-1, Pg.ID 6-15.)  Savvy removed Masco's action to this Court on February 4, 2015, based on the Court's diversity jurisdiction.  (*See* ECF #1.)

Savvy has now moved to dismiss Masco's Complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).   (*See* ECF #5.) The Court heard oral argument on the Motion to Dismiss on May 26, 2015. Following the hearing, the parties filed two sets of supplemental briefs (*see* ECF ##12, 13, 16, 17) which the Court has reviewed.

## GOVERNING LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(2), "[t]he plaintiff bears the burden of establishing through specific facts that personal jurisdiction exists over the non-resident defendant, and the plaintiff must make this demonstration by a preponderance of the evidence." *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012) (internal quotation marks omitted). Where, as here, a court does not hold an evidentiary hearing, "the plaintiff need only make a *prima facie* case that the court has personal jurisdiction." *Id.* (internal quotation marks omitted). The Court does "not weigh the facts disputed by the parties but instead consider[s] the pleadings in the light most favorable to the plaintiff." *Id.* The Court may, however, "consider the defendant's undisputed factual assertions." *Id.* "[A]lso where, as here, … there does not appear to be any real dispute over the facts relating to jurisdiction, the *prima facie* proposition loses some of its significance." *Id.* (internal quotation marks omitted).

## ANALYSIS

**A.    The Personal Jurisdiction Issue Before the Court Turns on Whether the Michigan Forum-Selection Clause is Part of the Parties' Contracts**

In a federal diversity action, "the law of the forum state dictates whether personal jurisdiction exists, subject to constitutional limitations." *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005). "A federal court must analyze jurisdiction in a two-step process. First, the court must determine if state law, here

8

Michigan law, grants the court authority to exercise personal jurisdiction over the defendant.    Second, the court must determine if the exercise of personal jurisdiction over the defendant satisfies the Fourteenth Amendment's Due Process Clause."  *In Re Trade Partners, Inc., Investors Litigation*, 627 F.Supp.2d 772, 776-777 (W.D. Mich. 2008).

A valid contractual forum-selection clause may be sufficient to satisfy both steps in the jurisdiction analysis process.  First, Michigan law "permits parties to contractually agree, in advance, to personal jurisdiction ...." *Omne Fin., Inc. v. Shacks, Inc.,* 596 N.W.2d 591, 595 (Mich. 1999); *see also In Re Trade Partners Inc.,* 627 F.Supp.2d at 778 (concluding that forum-selection clause satisfied Michigan law with respect to the exercise of personal jurisdiction over non-resident defendant).[1]  Second, "[a] freely-negotiated forum-selection provision that is not unreasonable or unjust 'does not offend due process.'"  *Id.* at 779 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n. 14 (1985)).

---

[1] Michigan law provides that where, as here, a forum-selection clause "provides the only basis for the exercise of jurisdiction" in this State, a Michigan court "shall entertain the action" if the following four criteria are satisfied: "(a) The court has power under [Michigan law] to entertain the action[;]    (b) [Michigan] is a reasonably convenient place for the trial of the action.[;] (c) The agreement as to the place of the action is not obtained by misrepresentation, duress, the abuse of economic power, or other unconscionable means[;] [and]   (d) The defendant is served with process as provided by court rules."    M.C.L. § 600.745(2)(a)-(d). Given the Court's conclusion that the Masco Terms and Conditions are not part of the parties' contracts, the Court need not address whether enforcing the Michigan Forum-Selection Clause would be permissible under M.C.L. § 600.745(2)(a)-(d).

Here, Masco argues that the Michigan Forum-Selection Clause satisfies both of these requirements. (*See* Masco Response Brief, ECF #6 at 7-8, Pg. ID 86-87.) Savvy has not disputed that the Michigan Forum-Selection Clause *could* satisfy both prongs of the test for personal jurisdiction. Instead, Savvy insists that the clause is not part of the parties' contracts.

Masco counters that the Michigan Forum-Selection Clause is part of the parties' contracts because Savvy agreed to be bound by the Masco Terms and Conditions that contained the clause. More specifically, Masco insists that each time Savvy responded to a Masco Quote by submitting a purchase order to Masco, Savvy and Masco formed a contract that incorporated the Masco Terms and Conditions – including the requirement that any disputes be resolved in Michigan. (*Id.* at 10-11, Pg. ID 89-90.)[2]  Masco explains that the Masco Terms and Conditions became part of the parties' contracts through the following four-step process:

> (1)  the Masco Quotes "constituted an offer to sell goods to [Savvy]" (*id.* at 10, Pg. ID 89);
>
> (2)  each Masco Quote "clearly referenced and incorporated" the Masco Terms and Conditions (*id.* at 9, Pg. ID 88);

---

[2] Masco does not assert any other basis for this Court's personal jurisdiction over Savvy other than Savvy's consent to jurisdiction in the Michigan Forum-Selection Clause. (*See*, *e.g.,* Masco Response Brief, ECF #6 at 7-8, Pg. ID 86-87.)

(3)     the Masco Terms and Conditions "expressly provide that … jurisdiction [for any dispute between the parties] lies exclusively within the federal or state courts in Ann Arbor, Michigan" (*id.*); and

(4)     Savvy "accepted [the Masco Quotes], and the [Masco] Terms and Conditions, by submitting the [the Savvy] Purchase Orders to purchase the goods described in [the Masco Quotes]." (*Id.* at 10, Pg. ID 89.)

The question before the Court therefore is: did the parties enter into contracts that included the Masco Terms and Conditions?  Since the parties did not mutually execute a single written contract including the Masco Terms and Conditions, the Court must determine whether Masco made an offer to enter into a contract containing those terms and whether Savvy accepted such an offer.  The Court must construe the offer and acceptance at issue "in light of the surrounding circumstances." *E.C. Dailey Co. v. Clark Can Co.*, 87 N.W. 761, 762 (Mich. 1901) (looking to course of business dealings between parties in construing offer and acceptance); *see also Patrick v. U.S. Tangible Investment Corp.*, 595 N.W.2d 162, 167 (Mich. App. 1999) (in determining whether parties have formed a particular contract, "a court will look to the language of the proposal, then consider any prior communications coupled with the circumstances surrounding the bargain").   For the reasons explained below, the Court concludes that the parties never entered into a contract that included the Masco Terms and Conditions.

11

**B.      Savvy and Masco Did Not Agree That the Masco Terms and Conditions, Which Include the Michigan Forum-Selection Clause, Would Govern the Parties' Relationship, and Thus the Clause May Not Serve as the Basis for Asserting Personal Jurisdiction Over Savvy**

As described in detail above, Masco argues that it entered into contracts with Savvy that incorporated the Masco Terms and Conditions, including the Michigan Forum-Selection Clause, when Savvy issued purchase orders in response to the Masco Quotes (which incorporated Masco's terms).  This argument ignores the "prior communications" between the parties, *Patrick*, 595 N.W.2d at 167, and it fails to put Savvy's responses to the Masco Quotes in the proper context of "the surrounding circumstances." *E.C. Dailey Co.,* 87 N.W. at 762.  When the entire course of dealings between the parties is considered, the most reasonable conclusion is that neither party – and certainly not Savvy – intended that the Masco Terms and Conditions would govern the parties' relationship and contracts.

The relationship between the parties did not start with the Masco Terms and Conditions.  It began with the execution of the Savvy Agreement.  That agreement addressed the working relationship between the parties and established a framework under which the parties would do business with one another.  Masco signed the Savvy Agreement and initialed each and every page to make clear that it reviewed and accepted all of the provisions.  (*See* ECF #5-2.)  Masco then conducted an additional review of the Savvy Agreement, negotiated a set of changes to that agreement, and memorialized those changes in the Addendum.

12

(*See* ECF #12 at 30-31, Pg. ID 296-297.)   The most reasonable view of the Savvy Agreement and the specifically-negotiated Addendum is that they represented the terms and conditions on which each party was willing to do business with the other.

There is no persuasive reason to believe, as Masco now claims, that after Masco specifically agreed to do business with Savvy on the terms set forth in the Savvy Agreement and the Addendum, Masco then turned around and offered (in the Masco Quotes) to make sales to Savvy if and only if Savvy accepted the Masco Terms and Conditions.   Simply put, if Masco was unwilling to do business with Savvy unless Savvy accepted the Masco Terms and Conditions, then Masco would not have entered into the Savvy Agreement and the Addendum.   Likewise, there is no reason to believe that Savvy intended to be bound by the Masco Terms and Conditions after (1) initially insisting that Masco accept the Savvy Agreement and (2) then agreeing to make only a limited set of changes to the Savvy Agreement by entering into the Addendum.   Against this background, it is unreasonable to conclude that Masco's offers to sell products to Savvy were contingent upon Savvy's acceptance of the Masco Terms and Conditions, and it is likewise unreasonable to conclude that Savvy accepted those terms when it made purchases from Masco.

13

Masco resists this conclusion.  It stresses that the Masco Quotes specifically stated that they incorporated the Masco Terms and Conditions.  But the boilerplate language purporting to incorporate the Masco Terms and Conditions is entitled to little weight given that the parties had already *specifically negotiated* the precise terms and conditions on which they would do business with one another in the Savvy Agreement and Addendum.  In light of the "surrounding circumstances," *E.C. Dailey Co.,* 87 N.W. at 762, the Court cannot conclude either (1) that Masco offered to make sales to Savvy only if Savvy accepted the Masco Terms and Conditions or (2) that Savvy in fact accepted those terms when it issued purchase orders in response to the Masco Quotes.[3]

Masco further argues that the Court's entire analysis rests upon a faulty premise.  Masco says that, contrary to the Court's conclusion, Masco had not agreed to be bound by the Savvy Agreement and Addendum before Masco sent Savvy the Masco Quotes.  In support of this argument, Masco points to the following language in the Savvy Agreement: "Note: Beginning work constitutes acceptance of general terms and conditions." (*See* ECF #5-2 at 1, Pg. ID 53.)

---

[3] Moreover, when Masco issued the Masco Quotes with proposed pricing and Savvy responded with its own purchase orders, the parties were acting in manner that was expressly contemplated by the Savvy Agreement (and Addendum). (*See* Savvy Agreement, ECF #5-2 at ¶11, Pg. ID 55 – providing that Savvy will "issue purchase orders at prices agreed upon in advance.")  This is yet another reason to reject Masco's argument that the quote/purchase order process displaced the Savvy Agreement and Addendum in favor of the Masco Terms and Conditions.

14

Masco says that it had not yet begun work – and thus was not yet bound by the Savvy Agreement and Addendum – when it issued the Masco Quotes and Savvy responded with purchase orders. Thus, Masco continues, it would be error to conclude that Masco was willing to business with Savvy on the terms reflected in Savvy Agreement and the Addendum.

This argument puts form over substance. While Savvy may not have had any legally enforceable rights against Masco under the Savvy Agreement and Addendum at the time Masco issued the first Masco Quote and Savvy issued the first purchase order, the Savvy Agreement and the Addendum nonetheless constitute a specifically-negotiated and unambiguous expression by Masco of its willingness to abide by Savvy's terms (as amended). Simply put, those agreements are the essential background against which the parties' relationship must be evaluated, and the Masco Quotes and the responsive purchase orders must be interpreted in light of those agreements. And when the Masco Quotes and Savvy purchase orders are so interpreted, it becomes clear that neither side intended to enter into a contract containing the Masco Terms and Conditions.

Because the Masco Terms and Conditions were not a part of the parties' agreements, the Michigan Forum-Selection Clause therein may not serve as the basis on which this Court may exercise personal jurisdiction over Savvy. And

because Masco has not argued this Court may exercise personal jurisdiction over Savvy on any other basis, the Court must grant Savvy's Motion to Dismiss.

## **CONCLUSION**

For the reasons explained above, Masco has failed to satisfy its burden to establish that the Court may exercise personal jurisdiction over Savvy.  Therefore, **IT IS HEREBY ORDERED** that Savvy's Motion to Dismiss (ECF #5) is **GRANTED**, and the Complaint (ECF #1) is **DISMISSED** for lack of personal jurisdiction.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  September 1, 2015

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on September 1, 2015, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(313) 234-5113